**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**METROPOLITAN LIFE INSURANCE,**
**Defendant–Appellant.**

**No. 88–7603.**

United States Court of Appeals,
Eleventh Circuit.

June 8, 1989.

---

Alan C. Christian, Johnstone, Adams, Bailey, Gordon & Harris, Mobile, Ala., for defendant-appellant.

J.B. Sessions, III, U.S. Atty., Edward Vulevich, Jr., Asst. U.S. Atty., Mobile, Ala., Gary R. Allen, Chief, William S. Rose, Jr., William S. Estabrook, Stuart E. Horwich, Appellate Section, Tax Div., U.S. Dept. of Justice, for plaintiff-appellee.

Before TJOFLAT and JOHNSON, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This appeal arises from the grant of summary judgment in favor of the government and against an insurance company in the amount of $20,898.79 under 26 U.S.C.A. § 6332(c)(1), representing the unelected cash withdrawal value of an annuity contract owned by a delinquent taxpayer, and $10,449.40 under 26 U.S.C.A. § 6332(c)(2), representing a 50% penalty for failing to honor the government's tax levy on the annuity contract without reasonable cause. We affirm.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by

## I. FACTS

On December 22, 1975, Fitzhugh Lee Jackson submitted an application to purchase an annuity contract from appellant Metropolitan Life Insurance Company. The insurance company accepted the application, and between 1975 and 1984 Jackson made contributions to the annuity totalling $13,500. On February 2, 1979, the IRS assessed a deficiency against Jackson for unpaid taxes from the years 1970 to 1974. As of March 6, 1984, Jackson still owed the government $155,717.72 from the deficiency assessed. On that day, the IRS served the insurance company with notice of levy pursuant to 26 U.S.C.A. § 6332(a) requiring the insurance company to transfer to the government all property the company held that was owned by Jackson or in which Jackson had property rights. The insurance company responded to the notice of levy on April 6, 1984, stating that it was obligated with respect to an annuity contract owned by Jackson but that the annuity contract was not property in its custody subject to levy within the meaning of section 6332(a).

The government filed suit against the insurance company on June 26, 1987, claiming that the insurance company had wrongfully failed to respond to the levy and seeking to impose liability on the insurance company under section 6332(c)(1) for the cash withdrawal value of the annuity. The government also sought imposition of a 50% penalty against the insurance company under section 6332(c)(2) for refusing to comply with the levy without reasonable cause. Both parties agreed there were no disputed issues of material fact, and the case was submitted to the district court on cross-motions for summary judgment. On June 28, 1988, the district court granted the government's motion for summary judgment and denied the insurance company's motion. This appeal followed.

## II. DISCUSSION

The IRS can levy against a delinquent taxpayer's property or rights to

designation.

property in the custody of a third party to satisfy a deficiency assessed against the taxpayer. 26 U.S.C.A. § 6331(a).[1] Once the third party receives notice of the tax levy, it is obligated to surrender the property to the IRS. 26 U.S.C.A. § 6332(a).[2] The third party can avoid this obligation in one of two ways. First, it can show that it is not in possession of any of the taxpayer's property or rights to property. Second, it can show that at the time it received notice of the levy the property was already subject to attachment or execution under judicial process. *See generally United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985). If the third party refuses to surrender property subject to levy, the third party is liable personally for the full value of the property. 26 U.S.C.A. § 6332(c)(1).[3] If the third party refuses to surrender the property without reasonable cause, the third party may be subject to an additional penalty of 50% of the value of the property. 26 U.S.C.A. § 6332(c)(2).[4]

The district court in this case held that under section 6331 the IRS could levy on the taxpayer's interest in an annuity contract issued by the insurance company. The district court held that the insurance company was obligated to deliver the cash withdrawal value of the annuity to the IRS under section 6332(a). Because the insurance company failed to comply with the levy, the district court assessed liability against the insurance company for the value of the annuity under section 6332(c)(1).

The district court further found that the insurance company's denial was without reasonable cause, and imposed a 50% penalty against the company under section 6332(c)(2).

■ The insurance company argues that annuity contracts are not property in the hands of the company subject to levy under section 6331. In cases prior to the 1966 amendments to the Internal Revenue Code of 1954, a delinquent taxpayer's interest in an unmatured life insurance policy or endowment contract was not considered property subject to levy under the statutory predecessor of section 6331. *See, e.g., United States v. Penn Mut. Life Ins. Co.,* 130 F.2d 495 (3d Cir.1942); *United States v. Metropolitan Life Ins. Co.,* 130 F.2d 149 (2d Cir.1942); *United States v. Massachusetts Mut. Life Ins. Co.,* 127 F.2d 880 (1st Cir.1942). The Supreme Court in *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958), held that although a taxpayer does not have a property right in the death proceeds of a life insurance policy, the taxpayer does have a property right in the cash surrender value of such a policy. Subsequent lower court decisions limited the effect of *Bess* by holding that although the taxpayer has property rights in the cash surrender value of an unmatured life insurance policy or endowment contract, the insurance company does not possess any of the taxpayer's property subject to levy. *See United States v. Mitchell,* 349 F.2d 94 (5th Cir.1965); *Mutual Life Ins.*

---

**1.** That section provides: "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax ... *by levy upon all property and rights to property* ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." (emphasis added)

**2.** That section provides: "Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made *shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary,* except such part of the property or rights as is, at the time of such demand, subject to an

attachment or execution under any judicial process." (emphasis added)

**3.** That section provides: "Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered...."

**4.** That section provides: "In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1)."

Co. v. United States, 343 F.2d 71 (9th Cir.1965). In response, Congress passed Section 104 of the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125, codified in part at 26 U.S.C.A. § 6332(b), which expressly permits the government to levy against an insurance company for the cash loan value of life insurance policies and endowment contracts owned by delinquent taxpayers.

The insurance company in this case argues that annuity contracts should be treated the same as life insurance policies and endowment contracts, and that under the logic of the decisions prior to 1966 the IRS cannot levy against an insurance company for the cash loan value or the cash surrender value of unmatured annuity contracts. The insurance company then argues that to the extent section 6332(b) changed that pre–1966 case law by allowing the IRS to levy against an insurance company for the cash loan value of insurance contracts and endowment contracts, section 6332(b) should be read as applying to only life insurance policies and endowment contracts because the statute identifies only those two types of contracts. The insurance company alternatively argues that even if section 6332(b) applies to annuity contracts, that section does not apply in this case because the taxpayer's annuity has no cash loan value. Thus, the insurance company argues that it is not in possession of any property of the taxpayer subject to levy within the meaning of section 6332(a).

■ The Supreme Court's decision in United States v. National Bank of Commerce, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), makes this argument untenable. A court assessing a levy on a taxpayer's intangible interest in property held by third parties must determine first the nature of the taxpayer's interest in the property. This is a question of state law. Id. at 724 n. 8, 105 S.Ct. at 2926 n. 8. Once the court has determined that a delinquent taxpayer has rights to the property, federal law determines whether the custodian of the property is obligated to surrender the property to the IRS. Id.; see generally

United States v. Bell Credit Union, 860 F.2d 365 (10th Cir.1988). The parties agree that under state law the taxpayer had the right to withdraw the full value of the annuity. The issue is whether this right is sufficient to obligate the insurance company under section 6332(a) to surrender the funds subject to the withdrawal right to the IRS upon receipt of the notice of levy. We hold that it is.

Congress intended the IRS to be able "to reach every interest in property a taxpayer might have." National Bank of Commerce, 472 U.S. at 720, 105 S.Ct. at 2924. In National Bank of Commerce, the Court held that because the taxpayer had the right to withdraw funds from a joint bank account under state law, the IRS could levy on the entire amount contained in the account, even though the taxpayer did not have any kind of property right in funds deposited by the two other joint account holders. Under the logic of that holding, the taxpayer's right in this case to withdraw the cash value of the annuity is a right to funds in possession of the insurance company within the meaning of section 6332. Id. at 724 n. 8, 105 S.Ct. at 2926 n. 8 ("[W]e agree with the Government that as a matter of federal law, the state-law right to withdraw money from a joint bank account is a 'right to property' adequate to justify the use of the provisional levy procedure."). Section 6332(a) therefore obligated the insurance company to surrender the funds subject to the taxpayer's withdrawal right to the IRS upon receipt of the notice of levy.

Under section 6332(b), the IRS can levy against only the cash loan value of a life insurance policy or endowment contract. This allows the IRS to extract the full liquid value of the insurance contract while avoiding the expense of foreclosure under 26 U.S.C.A. § 7403 and allowing the taxpayer to retain the insurance elements of the policy. See generally S.Rep. No. 1708, 89th Cong., 2d Sess., reprinted in 1966 U.S.Code Cong. & Admin.News 3722, 3739. Section 6332(b) does not apply in this case, however, because that section by its express language applies to only life insurance policies and endowment contracts.

We hold that the district court was correct in entering judgment against the insurance company for the cash withdrawal value of the annuity under section 6332(c)(1).

■ The district court also imposed a 50% penalty against the insurance company under section 6332(c)(2) for refusing to comply with the levy without reasonable grounds. The decision in *National Bank of Commerce* made it clear that third parties maintaining accounts in which taxpayers have the right to withdraw funds are in possession of property subject to levy.[5] The real controversy in *National Bank of Commerce* was whether that right alone, without necessarily a right to the funds themselves, was sufficient. The Court held that it was. Although section 6332(b) creates an exception for life insurance policies and endowment contracts, that exception does not apply in this case because annuities are neither insurance policies nor endowment contracts.

The insurance company in essence argues that sections 6332(a) and (c) do not apply because annuities should be treated the same as insurance contracts under the pre–1966 case law, and that section 6332(b) does not apply because annuities are neither insurance policies nor endowment contracts. There is no justification in logic or in the case law to treat annuity contracts in such a unique manner. Each case cited by the insurance company was decided prior to 1966 and involved unmatured life insurance policies. Annuity contracts simply were not involved in these decisions, and Congress modified the decisions in the Federal Tax Lien Act of 1966. *National Bank of Commerce* made clear that funds in possession of a third party subject to withdrawal by the taxpayer constitute property in custody of the third party. Once the insurance company in this case received notice of the levy from the IRS, it was obligated under section 6332(a) to surrender to the IRS the funds subject to the taxpayer's withdrawal right. In this case, then, the insurance company did not have

reasonable cause to deny that it was obligated to surrender the cash withdrawal value of the annuity to the IRS upon receipt of the notice of levy. *See generally State Bank of Fraser v. United States*, 861 F.2d 954 (6th Cir.1988) (penalty imposed because no unsettled area of law existed to provide reasonable ground for refusal to comply with levy); *United States v. Bell Credit Union*, 860 F.2d at 372 ("Reasonable cause for failing to honor the levies, I.R.C. § 6332(c)(2), 'should not be read to include a clearly erroneous view of the law, stubbornly adhered to after investigation should have disclosed the error.'") (quoting *United States v. Sterling Nat. Bank & Trust Co.*, 494 F.2d 919, 925 (2d Cir.1974) (Friendly, J., dissenting)). We hold that the district court did not err in imposing the 50% penalty on the insurance company.

### III.  CONCLUSION

We AFFIRM the grant of summary judgment against the insurance company under 26 U.S.C.A. §§ 6332(c)(1) and 6332(c)(2).

---

**5.** Although the opinion in *National Bank of Commerce* issued June 26, 1985, and the IRS served its notice of levy on the bank on March

6, 1984, this suit was filed June 26, 1987, so the insurance company had two years in which to comply with the levy.